# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **PETER K. MAIZITIS,** | : | Case No. 1:05CV0860 |
| Plaintiff, | : | |
| | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| | : | <u>OPINION AND ORDER</u> |
| **TUV AMERICA, INC.** | : | |
| | : | |
| Defendant. | : | |

This matter arises on Defendant TUV America, Inc.'s ("Defendant" or "TUV") *Motion for Summary Judgment* (Doc. 22). On April 13, 2006 Plaintiff Peter Maizitis ("Plaintiff" or "Maizitis") filed an Amended *Memorandum in Response to Defendant TUV's Motion for Summary Judgment* (Doc. 26). TUV filed a *Reply Memorandum in Response* (Doc. 27) on April 26, 2006. For the reasons articulated below, TUV America, Inc.'s *Motion for Summary Judgment* (Doc. 22) is **<u>GRANTED</u>**.

## I.     BACKGROUND

The allegations of Maizitis's complaint are minimal. Paragraph six, which appears to be the basis for Maizitis's claim, states that TUV: "compell[ed] Maizitis to enter into and be bound by a contract that did not conform to the laws of the State of Ohio . . . [and as a result] Maizitis has sustained severe and substantial injuries." Maizitis's claim, therefore, seems to be based upon the novel contention that he is entitled to damages as a result of entering into, and performing, a contract that was unenforceable as violative of Ohio public policy.

The uncontested, relevant facts are as follows. On March 27, 2000, Maizitis accepted a promotion to the position of service unit manager with TUV America. The position came with a

$10,000 salary increase.[1] Prior to beginning work in his new position, Maizitis signed a new Employment Agreement (the "Agreement"). Paragraph 3 of the Agreement is a non-solicitation clause, which reads:

> 3. <u>Non-Solicitation.</u> You agree that during the period of your employment with the Company, and for a period of two (2) years following your termination of employment with the Company for whatever reason, you shall not, directly or through another person or entity:
>
> (a) solicit, encourage, or otherwise aid any employee of the Company to leave the employ of the Company for the purpose of becoming associated with any business with which you intend to be, or are then associated;
>
> (b) retain, hire, engage, solicit or induce any supplier of any product or service or vendor (whether as a wholesaler, distributor, agent, commission agent, employee or otherwise) of the Company to terminate, reduce or refrain from renewing or extending his, her, or its contractual or other relationship with the Company; or
>
> (c) solicit, induce, contact or persuade any Customer (as defined below)[2] of the Company to terminate, reduce or refrain from renewing or extending its contractual or other relationship with the Company in regard to the purchase of products or services marketed and sold by the Company, or to become a customer of or enter into any contractual or other relationship with you or any other individual, person or entity in regard to the purchase of products or services manufacture[d], marketed or sold by the Company.

The Agreement also contains a choice of law provision, which states: "[t]he parties agree that this

---

[1] Maizitis specifically disavows the argument that the consideration supporting the Agreement was inadequate. (Opp. Br. at n.2.) (stating "Maizitis does not contend that the contract was void or voidable due to a want of consideration.")

[2] For purposes of the Agreement, "Customer" means "any company or individual: (1) who contacted you, whom you contacted or served, or for whom you supervised contact or service regarding the purchase of Company products or services during the period of your employment by the Company; and/or (2) who purchased products or services from the Company during the period of your employment by the Company."

2

agreement shall be governed and construed by and in accordance with the laws of the Commonwealth of Massachusetts." Maizitis read and signed the Agreement.

Maizitis worked as a service unit manager from April 17, 2000 through May 22, 2002, when his position was eliminated and his employment was terminated. TUV never began any action, formal or informal, to enforce any of the terms of Maizitis's employment agreement. The non-solicitation clause expired on May 22, 2004. Maizitis filed his Complaint in this matter on February 16, 2005.

## II. DISCUSSION.

Maizitis's argument is threefold: (1) the Agreement is governed by Ohio, not Massachusetts, law; (2) the non-solicitation clause was void as against (Ohio's) public policy; and (3) he is entitled to damages for entering into the Agreement. The Court, however, finds that each of these arguments fail to address the pivotal issue in this case: whether Maizitis has a cognizable claim under either Massachusetts or Ohio contract law.

### A. Standard of Review.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). TUV, the party moving for summary judgment, bears the initial burden of production under Rule 56. The burden may be satisfied by presenting affirmative evidence that negates an element of Maizitis's claim or by demonstrating "an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

If TUV meets this burden, Maizitis must "set forth the specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The substantive law identifies which specific facts are

3

material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, Maizitis must "make a showing sufficient to establish the existence of an element essential to the [his] case, and on which [he] will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

"The evidence of [Maizitis] is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 256 (citing Adickes v. Kress & Co., 398 U.S. 144, 158-59 (1970)). However, Maizitis must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "[T]he mere existence of some alleged factual disputes between the parties will not defeat an otherwise properly supported motion" for summary judgment. Anderson, 477 U.S. at 247-48.

**B.    Law and Analysis.**

The most challenging aspect of this case is deciphering the basis for Maizitis's claim(s) – a challenge the Court has faced since the initial filing of the complaint. Indeed, Maizitis's complaint originally contained two additional causes of action against TUV, possibly alleging wrongful termination based on Ohio public policy, invasion of privacy, and/or defamation. The allegations supporting those causes of action were sparse and obtuse. On April 8, 2005, TUV moved the Court for an order requiring a more definite statement of those claims. (Doc. 5). Plaintiff failed to respond to TUV's motion. On June 17, 2005, the Court found the Defendant's motion for a more definite statement well-taken, granted it, and required Plaintiff to file an amended complaint within ten (10) days. (Doc. 6). Plaintiff failed to file an amended complaint (or move for an extension of time) within the time provided by the Court. Accordingly, the Court ordered that the case proceed as to Count One of the complaint only. The Court, therefore, addresses the merits of Plaintiff's sole remaining claim, Count One.

4

According to Maizitis, the allegations of Count One comprise "an action at law subject to the fifteen (15) year statute of limitations applicable to suits based on a written contract." Opp. Br. at 10; see also Ohio Rev. Code § 2305.06.  Maizitis, however, has not stated a claim for breach of contract.  Simply put, he has not alleged a *breach* of the Agreement by TUV.  As discussed above, Maizitis received a raise, a promotion, and continued to work for TUV for two years after signing the Agreement.  Nothing in the complaint, the briefs, or the record provides any indication that TUV failed to comply with *any* provision of the Agreement.

Upon closer examination, Maizitis's argument is not that TUV failed to perform its portion of the Agreement, but that TUV compelled him "to enter into and be bound by a contract that did not conform to the laws of the State of Ohio."  Compl. ¶ 6.  In the alternative, Maizitis seems to claim: "that his mistaken belief that his restrictive employment agreement was valid led him to leave his job with [another employer]."  Opp. Br. at 11.  Assuming, *arguendo*, that the non-solicitation clause is void as against public policy, these statements neither describe a breach of contract, nor, as discussed below, provide a basis for any other cause of action relating to the Agreement.[3]

### 1. Maizitis Has Not Supported a Claim For Relief Under the Agreement.

At the outset, the Court observes that neither party has addressed whether, under Massachusetts or Ohio law,[4] a remedy even exists when two parties (both of the age of majority) enter into, and

---

[3] Maizitis has stated no basis for his claim other than the existence of the allegedly void non-solicitation clause.  In other words, if the non-solicitation clause is valid, Maizitis has no basis for his claims.  Because the non-solicitation clause which provides the basis for his complaint has expired, moreover, any potential action for declaratory or injunctive relief would be moot.  Indeed, Maizitis appears to recognize this fact by seeking only monetary damages.

[4] The parties dispute whether Massachusetts or Ohio law governs the contract.  The issue, however, is irrelevant because the principles at issue here are so fundamental to contract law that the states' laws do not meaningfully conflict.

5

completely perform, a contract that violates public policy. The Court's own research has not uncovered any case providing a remedy under these circumstances. Indeed, Ohio cases addressing actions brought under a void contract have stated that: "no damages can be recovered for breach of a contract that is violative of public policy." Westco Group, Inc. v. City Mattress, No. 12619, 1985 WL 144712, at *5 (Ohio App. 2d Dist. Aug. 15, 1991); see Facility Servs. & Sys., Inc. v. Vaiden, No. 86904, 2006 WL 1572236, at *7 (Ohio App. 8th Dist. Jun 08, 2006) ("However, there can be no cause of action for the breach of an agreement which is unenforceable as a matter of law."); see also Gross v. Campbell, 160 N.E. 852, 854 (Ohio 1928) (stating: "contractual relations of the parties [with] elements clearly inimical to public policy [are] destructive of the right of recovery."). Similarly, Massachusetts law bars actions arising under a contract that is void as against public policy whether those actions sound in tort or contract, or seek an equitable or legal remedy. Citizens for Citizens, Inc. v. Lambert, No. CIV.A.B99-00305, 2000 WL 744569, at *6-7 (Mass. Super. May 23, 2000). In Massachusetts, "[a] contract which is void *ab initio*, or void from the beginning, may not be enforced. No contractual duty exists, *no breach of contract is possible, and no judgment for money damages can be obtained under the contract. Judicial or equitable doctrines cannot breathe life into such a contract*." Massachusetts Mun. Wholesale Elec. Co. v. Town of Danvers, 577 N.E.2d 283, 292-93 (Mass. 1991) (emphasis added); see also Eisenstein v. David G. Conlin, P.C., 827 N.E.2d 686, 692 (Mass. 2005) (stating that contracts void as against public policy are not enforceable on an alternative theory of promissory estoppel.) (citing T.F. v. B.L., 813 N.E.2d 1244, n. 8 (Mass. 2004)); T.F. v. B.L., 813 N.E.2d at 1250 ("when a contract violates or conflicts with public policy, we treat it as void and will not enforce it.") (citations omitted).

As discussed above, the prohibition on actions for breach of a void contract is clear. Thus, if

6

it were true, as Maizitis claims, that the contract is void or unenforceable, then it is clear that *neither* party could pursue an action for its breach. Even if some ambiguity remained, however, Maizitis still would not have a cause of action because he is not alleging a breach of the Agreement; he is asking the Court to grant relief for the *non-breach* of that allegedly void contract. In other words, Maizitis believes that the Court should provide him a remedy under the circumstances because he (arguably) *could or should have breached* his Agreement with TUV (or sought to have it declared unenforceable) but failed to do so. The Court has not found, nor has Maizitis presented, any caselaw supporting the contention that one party is entitled to receive *additional*[5] compensation for performing obligations under a contract because he *could have* invalidated that agreement. In sum, Maizitis has failed to allege or support a recognizable claim under either Massachusetts or Ohio contract law. The Court, therefore, declines to further entertain what he describes as "an action under the contract."

## 2. Maizitis Has Disavowed Any Claims in Equity or Tort.

Ordinarily, the Court might try to scour Maizitis's complaint in an attempt to discover whether its bare allegations were designed to assert an action sounding in tort or equity (perhaps breach of fiduciary duty, unjust enrichment, or fraud). Maizitis, however, has repeatedly – and unequivocally – disavowed any tort or equity-based claims. See Opp. Br. at 11 ("*Maizitis does not raise any tort claims in this action. The only recovery that Maizitis seeks here are [sic] damages associated with contract suits.*") (emphasis added); id. ("Maizitis has never claimed an entitlement to tort based compensatory damages . . . ."); id. at 10 ("This is not a suit in equity."); id. at 12("TUV is relying on a [sic] equitable doctrine in this, an action at law. *As discussed above Maizitis is not seeking any equitable remedy.*")

---

[5] As noted above, Maizitis was already compensated once, at the time the Agreement was executed, and he does not argue that the consideration was insufficient *or* inadequate.

(emphasis added); id. at n.1 ("Contrary to TUV's assertion to the contrary Maizitis is pursuing a common law contract claim."). Maizitis's unambiguous disclaimer of any potential tort or equitable relief removes those issues from the Court's purview. See, e.g., Wood v. Mid-America Management Corp., 192 Fed.Appx. 378, 382 (6th Cir. 2006) ("Having failed to raise this contention in his complaint and having disclaimed bringing any [other] claim . . . in his deposition, [plaintiff] cannot tenably argue that the district court erred in dismissing it.").

Even absent Maizitis's disclaimer (or, likely, due to it), the Complaint, briefs, and record provide no facts or argument whatsoever that bear on the dispositive elements of relevant potential tort or equity actions so as to permit those claims to survive TUV's motion for summary judgment. For example, Maizitis does not address how he was "compelled" to enter into the Agreement with TUV, and the Court cannot permit the case to proceed on the bald assertion alone that Maizitis felt "compelled" to sign the Agreement. Tangwall v. Jablonski, 111 Fed.Appx. 365, 368 (6th Cir. 2004)(citations omitted) ("Bald assertions are insufficient to create a genuine issue of material fact."). Nor has Maizitis provided any facts or argument that would support the contention that TUV owed him a fiduciary duty, interfered with his ability to contract, or defrauded him.

Finally, even if Maizitis's complaint adequately alleged a tort (it does not), the record is undisputed that Maizitis signed the Agreement in March of 2000 and did not file suit until February 16, 2005. Any tort claims Maizitis conceivably could have alleged, therefore, would be barred by Ohio's four-year statute of limitations for most tort actions. See Ohio Rev. Code § 2305.09. After examining the briefs and considering the uncontested facts, the Court finds that Maizitis has failed to make a showing sufficient to establish the existence of elements essential to his claims.

**III.     CONCLUSION.**

For the reasons discussed above, TUV's *Motion for Summary Judgment* (Doc. 22) is **GRANTED**.  This case is hereby **DISMISSED** in its entirety**.**

**IT IS SO ORDERED.**

**s/Kathleen M. O'Malley**
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: February 20, 2007**